**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| SUZANNA BOWLING, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | CASE NO. 1:17-cv-03982 |
| Plaintiff, | ) ) | |
| | ) | **Oral Argument Requested** |
| v. | ) ) | |
| JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE PORTIONS OF PLAINTIFF'S COMPLAINT**

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ..................................................................................1

SUMMARY OF PERTINENT FACTS...................................................................... 2

LEGAL STANDARDS ............................................................................................. 4

ARGUMENT............................................................................................................ 5

A.    Plaintiff's claims are expressly preempted by the NLEA. ........................... 5

    1.    The NLEA expressly preempts state laws that seek to impose labeling requirements that are different from those imposed by federal law............................................................................................... 6

    2.    FDA regulations require products containing less than 0.5 gram trans fat to express trans fat content as zero....................................... 7

    3.    Plaintiff's state law claims seek to impose requirements that are different from those imposed by the NLEA and are therefore expressly preempted. ........................................................................ 8

B.    Plaintiff's claims are also impliedly preempted...................................... 11

C.    The presence of trans fat did not render Benecol unsafe for human consumption...........................................................................................12

D.    Plaintiff cannot certify a nationwide class. ...........................................14

CONCLUSION ...................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Ackerman v. Coca-Cola Co.*,
  09 CV 395, 2013 WL 7044866 (E.D.N.Y. July 18, 2013). ............................................ 14

*Altria Group, Inc. v. Good*,
  555 U.S. 70 (2008) ........................................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 4

*Bell At. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 4

*Chacanaca v. Quaker Oats Co.*,
  752 F. Supp. 2d 1111 (N.D. Cal. 2010) ........................................................................ 7

*Chen-Oster v. Goldman Sachs & Co.*,
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) .......................................................................... 4

*Crosby v. Soc. Sec. Admin.*,
  796 F.2d 576 (1st Cir. 1986) ........................................................................................ 4

*Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*,
  726 F.3d 62 (2d Cir. 2013)............................................................................................ 4

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995) ...................................................................................................... 11

*Goshen v. Mutual Life Ins. Co. of New York*,
  98 N.Y.2d 314 (2002) ................................................................................................... 16

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015).......................................................................... 4

*Hughes v. The Ester C Company*,
  317 F.R.D. 333 (E.D.N.Y. 2016)........................................................................... 15, 16

*In re Farm Raised Salmon Cases*,
  42 Cal.4th 1077 (Cal. 2008) ........................................................................................ 5

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  12 MD 2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ........................................ 16

*In re Grand Theft Auto Video Games Consumer Litig.*,
  251 F.R.D. 139 (S.D.N.Y. 2008) .................................................................................. 15

*In re Pepsico, Inc. Bottled Water Marketing and Sales Practices Litig.*,
  588 F. Supp. 2d 527 (S.D.N.Y. 2008) .......................................................................... 6

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007).........................................................................................4

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015)................................................................... 15

*Kaufman v. Sirius XM Radio, Inc.*,
   751 F. Supp. 2d 681 (S.D.N.Y. 2010) ..................................................... 16

*Koenig v. Boulder Brands, Inc.*,
   995 F. Supp. 2d 274 (S.D.N.Y. 2014) ..............................................6, 7, 8

*Martinelli v. Johnson & Johnson, et al.*,
   2017 WL 2257171 (E.D. Cal. May 23, 2017) ........................................ 3, 14

*Mills v. Foremost Ins. Co.*,
   511 F.3d 1300 (11th Cir. 2008) ................................................................. 4

*N.Y. State Restaurant Ass'n v. New York City Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009).............................................................passim

*New York SMSA Ltd. Partnership v. Town of Clarkstown*,
   612 F.3d 97 (2d Cir. 2010)......................................................................... 5

*Oscar v. BMW of North Am., LLC*,
   274 F.R.D. 498 (S.D.N.Y. 2011)............................................................... 15

*PLIVA, Inc. v. Mensing*,
   564 U.S. 604 (2011) ................................................................................. 11

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ..................................................................... 15

*Rodriguez v. It's Just Lunch, Intern.*,
   300 F.R.D. 125 (S.D.N.Y. 2014) ............................................................. 15

*Sikkelee v. Precision Airmotive Corp.*,
   822 F.3d 680 (3rd Cir. 2016) .................................................................... 11

*Wachovia Bank, N.A. v. Burke*,
   414 F.3d 305 (2d Cir. 2005) ...................................................................... 5

*Young v. Johnson & Johnson*,
   525 Fed. App'x 179 (3d Cir. 2013) ................................................2, 8, 10

**Statutes**

21 U.S.C. § 343(q) ........................................................................7, 8, 9

21 U.S.C. § 343(q)(1)(D) ..................................................................... 12

21 U.S.C. § 343(r) ..............................................................................7, 9

21 U.S.C. § 343(r)(1)(B) .......................................................................... 9

21 U.S.C. § 343-1(a)(4) ......................................................................6, 8

21 U.S.C. § 343-1(a)(5) ............................................................................ 6

Consolidated Appropriations Act, 2016.................................................. 13

New York General Business Law § 349.................................................... 16

New York General Business Law § 350.................................................... 16

**Other Authorities**

*Determination Regarding Partially Hydrogenated Oils,*
   80 Fed. Reg. 34650 (June 17, 2015) .............................................................................. 12

**Rules**

Fed.R.Civ.Proc. 23(b) ............................................................................................... 2, 3

Fed.R.Civ.Proc. 23(b)(3) ...................................................................................... 14, 15

**Regulations**

21 C.F.R. § 1.13(i)(3) ................................................................................................ 10

21 C.F.R. § 101.13(c) .................................................................................................. 7

21 C.F.R. § 101.61(b)(1) ............................................................................................ 10

21 C.F.R. § 101.62(b)(6)(iii) ...................................................................................... 10

21 C.F.R. § 101.62(c)(1) ............................................................................................ 10

21 C.F.R. § 101.62(d)(1) ............................................................................................ 10

21 C.F.R. § 101.9(c)(2)(ii) ....................................................................................... 7, 8

21 C.F.R. § 101.9(f)(1) ................................................................................................ 7

21 C.F.R. 101.9 ........................................................................................................... 7

**Constitutional Provisions**

U.S. Const., art. VI, cl. 2 ......................................................................................... 11

## SUMMARY OF ARGUMENT

The facts presented in this putative class action are simple and straightforward: Plaintiff alleges the Benecol Spread and Benecol Light Spread (collectively, "Benecol") products she purchased, which were manufactured by Defendants McNeil Nutritionals, LLC and Johnson & Johnson (collectively, "Defendants"), were falsely and misleadingly labeled as containing "No Trans Fats" and "No Trans Fatty Acids" because they in fact contained small traces of trans fat in the form of partially hydrogenated soybean oil.[1] Plaintiff also alleges the Benecol labels were false and misleading because they implied the products were generally recognized as safe for human consumption which, Plaintiff avers, is not the case since they contained partially hydrogenated oils ("PHOs"). *Id.* Based on these claims, Plaintiff asserts claims for breach of warranty, unjust enrichment, violation of New York's General Business Law, misrepresentation, and fraud.

The law governing Plaintiff's state law claims is also simple and straightforward. As a federally regulated food product, Benecol is subject to the Food, Drug and Cosmetic Act ("FDCA"), as amended by the Nutritional Labeling Education Act ("NLEA"), which contains express preemption provisions that preclude state law claims which impose requirements that are different from or beyond the requirements of federal law. Relevant federal regulations require manufacturers of foods that contain less than 0.5 gram of trans fats to label the products as containing zero gram, or "0g," trans fat. Federal regulations allow manufacturers to make "nutrient content claims," such as

---

[1] The "No Trans Fat" and "No Trans Fatty Acid" statements were removed from Benecol during a packaging redesign in 2011.  Defendants divested the Benecol brand in 2015.

claims that a product contains "no fat" or "zero fat," without requiring reference to a per-serving limitation provided the product contains less than 0.5 gram per serving. FDA considers the terms "zero" and "no" to be synonymous when describing food nutrient contents. The Benecol labels complied with all federal regulations.

Plaintiff does not allege Defendants violated federal law in labeling Benecol products, but instead seeks to impose liability based on state law claims that would impose labeling requirements on Defendants that differ from and go beyond those required by federal law. Thus, instead of disclosing that Benecol had "0g," "zero" or "no" gram trans fats, Plaintiff seeks to impose liability for Defendants' failure to disclose that the products contained a trace amount of trans fat. Requiring Defendants to list the presence of trans fat in Benecol, however, would have directly conflicted with federal labeling requirements and is therefore expressly preempted. This was the conclusion reached by the Third Circuit in the nearly identical case of *Young v. Johnson & Johnson*, 525 Fed. App'x 179 (3d Cir. 2013), and is the only conclusion to reach in this case. Plaintiff's claims are also impliedly preempted because they would create an impossible-to-resolve conflict with federal labeling requirements.

Plaintiff further alleges Benecol labels were false and misleading because the FDA has determined that the presence of PHO in food products renders them unsafe for consumption. This claim is factually incorrect and ignores federal law that sanctions the use of PHOs in food products until June 18, 2018.

Finally, Plaintiff purports to bring this putative class action on behalf of a nationwide class. As Plaintiff and her counsel are well aware, however, Rule 23(b) does

not allow for nationwide certification of her claims. Indeed, only one week prior to the filing of the Complaint in this action, in a case substantively identical to this one, a California court rejected counsel's request to add Plaintiff as a party to the California class action and their attempt to certify a nationwide class.[2]  The California district court held that when the laws of 50 states must be applied to the nationwide claims of a case, Rule 23(b)'s predominance requirement cannot be met. Plaintiff's nationwide class allegations meet the same fate in this case. Thus, should the Court decline to dismiss the Complaint with prejudice on preemption grounds, at a minimum, it should dismiss the nationwide class allegations with prejudice.

## SUMMARY OF PERTINENT FACTS

Plaintiff, a New York resident, purchased Benecol that was manufactured by Defendants. Complaint, ¶¶ 5-7. The "Nutrition Facts" box on the Benecol products she purchased listed the trans fat content of Benecol as "0g" and identified "Partially Hydrogenated Soybean Oil," which always contains trans fat, as an ingredient in the products. *Id.*, ¶¶ 15, 17. Prior to and at the time of her purchase, Plaintiff reviewed Benecol's labels and packaging and saw the statements "No Trans Fats" and "No Trans Fatty Acids," which appeared outside the Nutrition Facts box.  *Id.*, ¶¶ 5, 13-17. Plaintiff would not have purchased Benecol had she known it contained trans fat or was unsafe for consumption. *Id.*, ¶ 5.

---

[2] The California case, which Plaintiff's counsel filed in August 2015, is *Martinelli v. Johnson & Johnson, et al.*, No. 2:15-CV-01733-MCE-DB. The decision to reject counsel's attempt to add Plaintiff as a named party to that action (due to counsel's failure to act diligently), as well as denial of nationwide class certification is available at 2017 WL 2257171 (E.D. Cal. May 23, 2017).

## LEGAL STANDARDS

Defendants' grounds for dismissal arise under Federal Rule 12(b)(6), which requires dismissal when plaintiff fails to set forth sufficient facts "to state a claim for relief that is plausible on its face." *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff cannot rely on "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's allegations must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 71 (2d Cir. 2013). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Dismissal of class allegations at the motion to dismiss stage, while uncommon, "is not procedurally premature" and is appropriate where a defendant "'demonstrate[s] from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.'" *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (quoting *Chen-Oster v. Goldman Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012)). Many courts have dismissed class allegations based on nothing more than the legal theories alleged in a complaint. *See, e.g.*, *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) (upholding dismissal of class allegations under Rule 12(b)(6) where it is "facially apparent from the pleadings that there is no ascertainable class"); *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986) (affirming dismissal of class claims on the pleadings because controlling precedent precluded class-wide relief); *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir.

2008) ("In some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings.").

## ARGUMENT

### A.      Plaintiff's claims are expressly preempted by the NLEA.

The federal preemption doctrine stems from the Supremacy Clause of the Constitution, which provides that state and local laws that conflict with federal law are "without effect." *New York SMSA Ltd. Partnership v. Town of Clarkstown*, 612 F.3d 97, 103-04 (2d Cir. 2010) (citing *Altria Group, Inc. v. Good*, 555 U.S. 70 (2008)). Courts recognize three types of preemption: "(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, "where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law,' and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *Id.* (citing *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005)). The "key to the preemption inquiry is the intent of Congress," which may be manifested "explicitly, through the express language of a federal statute, or implicitly, through the scope, structure, and purpose of the federal law." *Id.*

Congress enacted the NLEA in 1990 as an amendment to the FDCA "to create uniform national standards regarding the labeling of food and to prevent states from adopting inconsistent requirements with respect to the labeling of nutrients." *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1086 (Cal. 2008)). The language of the

NLEA unequivocally establishes that Plaintiff's state law claims are subject to both express preemption and conflict preemption.

> **1.      The NLEA expressly preempts state laws that seek to impose labeling requirements that are different from those imposed by federal law.**

The NLEA was enacted "to clarify and to strengthen the Food and Drug Administration's [FDA] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 278-79 (S.D.N.Y. 2014) (citing *N.Y. State Restaurant Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009)). The Act, in relevant part, provides:

> "[N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . .
>
> any requirement for nutrition labeling of food that is *not identical to* the requirement of section 343(q) of this title . . . or . . .
>
> any requirement respecting any claim of the type described in section 343(r)(1) of this title, made in the label or labeling of food that is *not identical to* the requirement of section 343(r) of this title . . . ."

*See* 21 U.S.C. § 343-1(a)(4)-(5) (emphasis added); *see also Koenig*, 995 F. Supp. 2d at 280 ("[t]he effect of the NLEA's preemption provision is to ensure that the states only enact food labeling requirements that are *equivalent to, and consistent with*, the federal food labeling requirement[;]" any state laws "that impose affirmatively different labeling requirements from federal law in these areas will be preempted" [emphasis added]); *see also In re Pepsico, Inc. Bottled Water Marketing and Sales Practices Litig.*, 588 F.

Supp. 2d 527, 532 (S.D.N.Y. 2008) (NLEA's express preemption provisions operate such that "state law cannot impose obligations beyond, or different from, what federal law requires").

NLEA Sections 343(q) and 343 (r) set forth specific labeling requirements that govern, respectively, claims made in the "Nutrition Facts" box of a product's packaging and claims made elsewhere on the packaging. *See Koenig*, 995 F. Supp. 2d at 279; *NY State Rest. Ass'n*, 556 F.3d at 119. [3] The FDA has promulgated specific regulations to implement these provisions.

### 2. FDA regulations require products containing less than 0.5 gram trans fat to express trans fat content as zero.

FDA regulations impose a set of "rounding rules" for nutrient labeling, *see* 21 C.F.R. 101.9, which apply equally to trans fat, 21 C.F.R. § 101.9(c)(2)(ii). Specifically, section 101.9(c)(2)(ii) provides that "label declaration of trans fat content *is not required* for products that contain less than 0.5 gram of total fat in a serving if no claims are made about fat, fatty acid or cholesterol content." *Id.* (emphasis added). Any amount of trans fat less than 0.5 gram per serving is defined by FDA as an "insignificant amount." 21 C.F.R. § 101.9(f)(1) (authorizing use of the simplified form Nutrition Facts box for products containing an "insignificant amount" of trans fats, which are defined as "the amount that allows a declaration of zero in nutrition labeling," *i.e.*, less than 0.5 gram per serving); *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1117 (N.D. Cal. 2010) (quoting 58 Fed. Reg. 44020-01, 44024 (Aug. 18 1993) (FDA justified

---

[3] Though the Nutrition Facts box contains information about nutrient content, the claims made in it are not considered "nutrient content claims" for purposes of FDA regulations. *See* 21 C.F.R. § 101.13(c).

its rule regarding insignificant amounts of trans fats down to zero because that amount per serving is "nutritionally trivial")). Federal regulations mandate that "[i]f the serving contains less than 0.5 gram [of trans fat], the content, when declared *shall be expressed as zero.*" 21 C.F.R. § 101.9(c)(2)(ii) (emphasis added).

### 3.   Plaintiff's state law claims seek to impose requirements that are different from those imposed by the NLEA and are therefore expressly preempted.

Plaintiff does not allege that Benecol contained more than 0.5 gram trans fat or that the labels did not comply with federal labeling requirements. Instead, Plaintiff complains that Benecol labeling was false and misleading because it described Benecol as containing "no trans fat" and "no trans fatty acids," even though it contained partially hydrogenated soybean oil, which Plaintiff concedes *always* contains some amount of trans fat. Thus, instead of adhering to federal regulations that required Defendants to "round down" the less than 0.5 gram of trans fat in Benecol to zero grams, or "0g," Plaintiff alleges that in addition to listing the PHO in the products' ingredient list, Defendants should have indicated the products contained trace amounts of trans fat, and that had Defendants done so, she would not have purchased Benecol. Complaint, ¶ 5.

Any state law that requires a food manufacturer to identify the specific amount of trans fat in a  product that contains less than 0.5 gram trans fat directly contravenes the federal labeling requirements set forth in section 343(q) and is therefore preempted. *See NY State Rest. Ass'n*, 556 F.3d at 120 (the preemption provision for nutrient information labeling, § 343-1(a)(4), "preempts any state or local 'requirement for nutrition labeling of food *that is not identical to the requirement of* [S]ection 343(q)" (emphasis added)); *Koenig*, 995 F. Supp. 2d at 283 (state law claims on nutrition

information labeling survive only to the extent they "impose requirements 'identical to'" federal law); *see also Young*, 525 F. App'x at 182-83 (holding that Benecol's label statements regarding its trans fat content were permitted by FDA regulations, therefore claims that sought to impose requirements that differ from those regulations are expressly preempted by the NLEA).

Plaintiff's challenges to Benecol's "No Trans Fat" and "No Trans Fatty Acids" nutrient content claims are also expressly preempted.  *See NY Rest. Ass'n*, 556 F.3d at 120 (plaintiff cannot predicate liability on an alleged requirement for nutrient claims under state law because states "are preempted from adopting nutrient claim laws as defined by Section 343(r)). In order to prevail on her nutrient content challenges, Plaintiff must establish that Defendants' "No Trans Fat" and "No Trans Fatty Acids" representations constituted misbranding as a matter of law, something she cannot do.

The NLEA provides that a food product is not "misbranded" if "it is a food intended for human consumption . . .  and for which a claim is made in the label or labeling of the food which expressly or by implication . . . characterizes the relationship of any nutrient which is of the type required by paragraph (q)(1) or (q)(2) to be in the label or labeling of the food." 21 U.S.C. § 343(r)(1)(B). As noted above, federal regulation § 343(q)(1) specifically mandates that foods with less than 0.5 gram trans fat identify the trans fat content as zero, or "0g." The nutrient content claims of "no trans fat" and "no trans fatty acids" therefore fall within the safe harbor of § 343(r) and cannot amount to misbranding as a matter of law.

Put another way, the "No Trans Fat" and "No Trans Fatty Acids" nutrient content claims were not false or misleading as a matter of law because they were synonymous with the "0g" of trans fat listed in the Nutrition Facts box. FDA has repeatedly expressed

its view that the terms "zero" and "no" are synonymous and can be used interchangeably. For example, FDA acknowledges that "fat free," "free of fat," "no fat," "zero fat," "without fat," and "100 percent fat free" are all functionally equivalents. *See* 21 C.F.R. § 101.62(b)(6)(iii). So too are the terms "sodium free," "free of sodium," "no sodium," "zero sodium," and "without sodium." 21 C.F.R. § 101.61(b)(1). The same applies to saturated fat content claims (21 C.F.R. § 101.62(c)(1)) and cholesterol content claims (21 C.F.R. § 101.62(d)(1)). Just as "zero fat" is synonymous with "no fat," so too is "zero trans fat" synonymous with "no trans fat" and Plaintiff's averments to the contrary are unavailing in the face of FDA's interpretations of these terms.

The Third Circuit Court of Appeals adopted this very reasoning on nearly identical facts in *Young v. Johnson & Johnson*, 525 Fed. App'x 179 (2013). In that case, the court affirmed dismissal of deceptive labeling claims regarding Benecol, explaining that "[w]hile FDA regulations do not specifically say a product can advertise itself as containing 'NO TRANS FAT' when it has an insignificant amount, they do allow 'nutrient content claim[s],' [21 C.F.R.] § 101.13(b), such as claims that a product contains 'no fat' or 'no saturated fat' . . . provided that the product indeed contains less than 0.5 grams per serving.'" *Young*, 525 Fed. App'x at 182-83. Analogizing to the regulations authorizing "calorie free" or "sodium free" claims, the Third Circuit held that "the 'NO TRANS FAT' claim on the Benecol label is not 'misleading' as that term is used in 21 C.F.R. § 1.13(i)(3), and is authorized under that provision, even if a 'no trans fat' claim is not expressly contemplated by the regulations." *Id.* at 183.

Plaintiff's allegations here compel the same result as *Young*. Federal regulations state that trans fat amounts of less than 0.5 gram per serving are "insignificant" and must be reported as "0g," and, as recognized by the FDA, the terms "zero" and "no" are

synonymous. Thus, as with her Nutrition Facts box labeling challenges, Plaintiff's nutrient content claim challenges are expressly preempted and must be dismissed.

### B.     Plaintiff's claims are also impliedly preempted.

State laws may be preempted without reference to an express preemption provision if federal and state law "conflict" in such a way that compliance with both federal and state law is "impossible" *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)).[4] Such is the case here.

The Supreme Court recently clarified the test by which to determine when a state law claim is preempted due to "impossibility." In *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), the Court held that "[t]he question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it." *Id.* at 620 (emphasis added). "Independently," the Supreme Court determined, means "a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency[.]" *Id.* at 623-24. Although *Mensing* dealt with generic drugs approved for market under the FDCA, its rationale applies to any instance in which a conflict between a manufacturer's compliance with a federal regulatory scheme would create an impossible conflict with an alleged state tort duty. *See Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 703-04

---

[4] Although the NLEA states that it "shall not be construed to preempt any provision of state law, unless such provision is expressly preempted," *NY State Rest. Ass'n*, 556 F.3d at 123, this does not foreclose application of "impossibility" preemption, which is a logical corollary of the Supremacy Clause itself. *See* U.S. Const., art. VI, cl. 2 ("The Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

(3rd Cir. 2016) (recognizing "there may be cases where a manufacturer's compliance with [a federal regulation] and a state law standard of care 'is a physical impossibility.'").

The Supreme Court's "impossibility" analysis implies three distinct considerations: (1) identify what actions the plaintiff's allegations require the defendant to take; (2) determine whether there is a federal law or regulation that prevents the defendant from taking such action without first obtaining a federal agency's special permission and assistance; and (3) if federal law prevents the defendant from taking corrective action unilaterally, the claim is preempted. This analysis leads inexorably to the conclusion that Plaintiff's claims here are preempted. Plaintiff's state law claims would have required Defendants to identify the presence of trans fats in Benecol, even though federal law *required* Defendants to list the amount of trans fat content in Benecol as "0g." Had Defendants defied federal law and described the amount of trans fats as anything other than "0g," the products would have been misbranded under 21 U.S.C. § 343(q)(1)(D). Thus, because federal law forbade Defendants from doing what Plaintiff alleges state law compels, Plaintiff's state law claims are preempted due to the existence of an impossible-to-resolve conflict between federal and state law.

### C.    The presence of trans fat did not render Benecol unsafe for human consumption.

Plaintiff alleges Defendants' labeling of Benecol was false and misleading because the FDA has determined that PHOs, the trans fat found in Benecol, are not generally recognized as safe, or "GRAS," and are therefore unsafe for consumption.  Complaint, ¶¶ 2, 31-34. Plaintiff misstates the FDA's determinations respecting PHOs and her state law claims contravene federal law, which permit the use of PHOs in foods until June 18, 2018 and shield food manufacturers from liability from using PHOs during that time.

PHOs have a "long history of use as food ingredients" and, until recently, have "generally been recognized as safe" for use by the FDA. *Final Determination Regarding Partially Hydrogenated Oils*, 80 Fed. Reg. 34650, 34650-51 (June 17, 2015).  On June 17, 2015, however, the FDA issued a Final Determination announcing that on June 18, 2018, it will review PHO use in food products on a case-by-case basis. The FDA based this determination on its finding that "there is no longer a consensus among qualified experts that partially hydrogenated oils (PHOs) . . . are generally recognized as safe (GRAS) for any use in human food. *Id.* at 34650. Significantly, the FDA did not conclude that PHOs are "unsafe." *Id.* at 34654. Instead, it "encourage[d] submission of scientific evidence as part of food additive petitions. . . for one or more specific uses of PHOs for which industry or other interested individuals believe that safe conditions of use may be prescribed." *Id.* at 34653.

The Consolidated Appropriations Act for 2016, which was signed into law on December 18 2015, confirms that PHOs may lawfully be used until June 18, 2018, and that manufacturers cannot be held liable for their use during this time. Pub. L. No. 114-113, § 754, 129 Stat. 2242, 2284 (2015). Specifically, section 754 of the Act provides:

> "No partially hydrogenated oils as defined in the order published by the Food and Drug Administration in the Federal Register on June 17, 2015 (80 Fed. Reg 34650 et seq.) shall be deemed unsafe within the meaning of section 409(a) and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially hydrogenated oil shall be deemed adulterated under sections 402(a)(1) or 402(a)(2)(C)(i) by virtue of bearing or containing a partially hydrogenated oil under the compliance date as specified in such order (June 18, 2018)."

*Id.*

The foregoing directly undermines and precludes Plaintiff's state law claims premised on the FDA's recent determinations respecting PHOs in food.

### D. Plaintiff cannot certify a nationwide class.

All of Plaintiff's claims should be dismissed as preempted by federal law, but should the Court determine that dismissal of Plaintiff's claims is premature, it should nonetheless strike Plaintiff's claims on behalf of a nationwide class because it is apparent from the face of the Complaint that certification of a nationwide class will be impossible, no matter what facts emerge from discovery. Specifically, variations in state law related to Plaintiff's fraud- and deception-based claims necessarily render it impossible for the Court to certify a nationwide class for any of Plaintiff's claims under Rule 23(b)(3). Indeed, and as Plaintiff and her counsel know, striking Plaintiff's class claims is consistent with the decision by the court in *Martinelli* v. *Johnson & Johnson*, No. 2:15-CV-01733-MCE-DB, 2017 WL 2257171, *5 (E.D. Cal. May 23, 2017) ("the Court is not convinced that any amount of additional discovery will be useful or necessary to a class certification ruling" because "when the laws of 50 states must be applied to the nationwide claims of a case, Rule 23(b)(3)'s predominance requirement is not met.")

The Second Circuit's approach to class certification is consistent with *Martinelli*. Courts have "a duty to take a close look at whether common questions predominate over individual ones." *Ackerman v. Coca-Cola Co.*, 09 CV 395, 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). The predominance requirement "is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L.*

14

*Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). But "[w]hen claims in a class action arise under state law—and the class comprises multiple states—the court must consider whether different state laws will apply to different members of the class." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 140 (2d Cir. 2015).

Here, the applicable state laws would vary state-to-state with regard to each one of Plaintiff's six causes of action. For example, multiple courts within this district have recognized that breach of warranty claims are not suitable for nationwide class treatment. *See, e.g., In re Grand Theft Auto Video Games Consumer Litig.*, 251 F.R.D. 139, 161 (S.D.N.Y. 2008) (decertifying nationwide settlement class due to differences in state privity requirements); *Oscar v. BMW of North Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (Magnuson-Moss warranty claims not suitable for nationwide class certification because "differences in state laws often predominate over common questions."). Similarly, courts recognize the predominance of individual issues over common ones to be an insurmountable obstacle in the way of nationwide classes seeking to assert unjust enrichment claims. *See, e.g., Rodriguez v. It's Just Lunch, Intern.*, 300 F.R.D. 125, 142-43 (S.D.N.Y. 2014) (citing the variance "from state to state" of unjust enrichment laws); *Hughes v. The Ester C Company*, 317 F.R.D. 333, 352-53 (E.D.N.Y. 2016) (denying certification due to state-by-state variation).

The same rationale precludes nationwide certification of Plaintiff's claims based on misrepresentations and fraud. Indeed, the *Hughes* court refused to certify a nationwide negligent misrepresentation class, holding that "significant variations between the laws of the fifty states . . . defeat Rule 23(b)(3)'s predominance requirement," including the fact "that not every State recognizers the tort of negligent misrepresentation, and some states only recognize it under certain circumstances."

*Hughes*, 317 F.R.D. at 352. Claims sounding in fraud, too, are poorly suited for nationwide class treatment because "[u]nder New York choice of law principles, claims sounding in fraud . . . are governed by the law of the state in which the injury is deemed to have occurred." *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 12 MD 2413, 2013 WL 4647512, at *19 (E.D.N.Y. Aug. 29, 2013).

Finally, Plaintiff's two statutory claims under New York General Business Laws §§ 349 and 350 cannot be certified on a nationwide basis as a matter of governing New York law. Thus, in *Kaufman v. Sirius XM Radio, Inc.*, 751 F. Supp. 2d 681 (S.D.N.Y. 2010), the court dismissed the plaintiff's putative class action claims where the plaintiff sought to "bring suit for a single, nationwide class under [GBL] § 349 . . . rather than limiting the [GBL] § 349  claim to New Yorkers." *Id.* at 686. The court reasoned that under the proper interpretation of the statute, "to qualify as a prohibited act . . . the deception of a consumer *must occur in New York*." *Id.* (citing *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d 314, 321 (2002)). Here, because a nationwide class would necessarily involve claims by plaintiffs who rely on purchases of Benecol outside of New York, individualized issues (particularly the location of the alleged deception) would overwhelm the common issues, preventing certification.

## CONCLUSION

The crux of Plaintiff's lawsuit is an attempt to use New York state law claims as a device to impose liability on Defendants for labeling Benecol as containing "zero" or "no" trans fat even though FDA regulations *expressly required* them to identify the amount of trans fat as "0g." That fact alone requires preemption of Plaintiff's claims, both under the NLEA's express preemption provisions and the doctrine of implied preemption. If the Court nonetheless decides that any claim survives preemption, it

should still, at the very least, strike those portions of the Complaint that seek certification of a nationwide class because it is demonstrable from the face of Plaintiff's Complaint that none of her claims can be certified under Rule 23(b)(3) due to individualized state law differences.

Dated: July 21, 2017                            Respectfully submitted,


                                                */s/ Katherine A. Garceau*
                                                Katherine A. Garceau (5425186)
                                                TUCKER ELLIS LLP
                                                Willis Tower
                                                233 South Wacker Drive, Suite 6950
                                                Chicago, IL 60606
                                                T: 312.624.6319
                                                F: 312.624.6309
                                                katherine.garceau@tuckerellis.com

17

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on July 21, 2017, a copy of the foregoing was filed electronically via the Court's CM/ECF system, which will have sent notice to the attorneys of record in this matter.

/s/ *Katherine A. Garceau*
Katherine A. Garceau
