# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUZANNA BOWLING, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHNSON & JOHNSON and McNEIL NUTRITIONALS, LLC,<br><br>    Defendant. | Case No. 1:17-cv-03982-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT RENEWED MOTION TO FILE DOCUMENTS UNDER SEAL**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. LEGAL STANDARD ........................................................................................................... 2

III. ARGUMENT ........................................................................................................................ 3

    A. This Court Should Seal Information Related to Plaintiffs' Unrelated Settlement with McNeil ............................................................................................ 3

        1. The presumption of access should carry little or no weight as it relates to the irrelevant terms of the settlement .......................................... 4

        2. The parties' interest in confidentiality rebuts the public's weak interest in viewing the full terms of the agreement .................................. 5

    B. This Court Should Seal McNeil's Proprietary Business Information .................... 6

    C. This Court Should Seal Plaintiff's Medical Information ..................................... 11

    D. This Court Should Seal Irrelevant Personal Information ..................................... 12

IV. CONCLUSION ................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Angidynamics, Inc. v. Biolitec, Inc.*,
2011 WL 13206054 (N.D. N.Y. Jun. 14, 2011) ........................................................................ 7

*Bernsten v. O'Reilly*,
307 F. Supp. 3d 161 (S.D.N.Y. 2018) ................................................................................. 4, 5

*Dugan v. Lloyds TSB Bank, PLC*,
2013 U.S. Dist. LEXIS 51162 (N.D. Cal. Apr. 9, 2013) ........................................................ 10

*Encyclopedia Brown Prods. v. Home Box Office*,
26 F. Supp. 2d 606 (S.D.N.Y. 1998) ...................................................................................... 8

*GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*,
769 F. Supp. 2d 630 (S.D.N.Y. 2011) .................................................................................. 10

*Hartford Courant Co. v. Pellegrino*,
380 F.3d 83 (2d Cir. 2004) ..................................................................................................... 4

*In re Digital Music Antitrust Litig.*,
321 F.R.D. 64 (S.D.N.Y. 2017) .............................................................................................. 6

*In re Gabapentin Litig.*,
312 F. Supp. 2d 653 (D.N.J. 2004) .................................................................................. 8, 11

*In re New York Times Co.*,
828 F.2d 110 (2d Cir. 1987) ................................................................................................... 5

*In re Parmalat*,
258 F.R.D. 236 (S.D.N.Y. 2009) ............................................................................................ 5

*Joy v. North*,
692 F.2d 880 (2d Cir. 1982) ................................................................................................... 2

*Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*,
2012 WL 1022258 (S.D.N.Y. Mar. 22, 2012) ................................................................ 3, 4, 5

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006) ......................................................................................... 2, 3, 4, 5

*Madukwe v. Del. State Univ.*,
552 F. Supp. 2d 452 (D. Del. 2008) ....................................................................................... 6

*N.Y. v. Actavis, PLC*,
2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) ......................................................................... 6

*New York v. Actavis, PLC*,
2014 U.S. Dist. LEXIS 149327 (S.D.N.Y. Oct. 21, 2014) ...................................................... 9

*Nixon v. Warner Communications, Inc.*,
435 U.S. 589 (1978) ............................................................................................................... 7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Nycomed US, Inc. v. Glenmark Generics, Inc.*,
   2010 U.S. Dist. LEXIS 20788 (E.D.N.Y. Mar. 8, 2010) ............................................................ 8

*Nycomed US, Inc.*,
   2010 U.S. Dist. LEXIS 20788 (E.D.N.Y. Mar. 8, 2010) .......................................................... 11

*Playtex Prods., LLC v. Munchkin, Inc.*,
   2016 U.S. Dist. LEXIS 42261 (S.D.N.Y. Mar. 29, 2016) ......................................................... 9

*Republic Servs., Inc. v. Liberty Mut. Ins. Co.*,
   2006 WL 3004014 (E.D. Ky. Oct. 20, 2006) .......................................................................... 6

*Seoul Viosys Co., Ltd. v. P3 Int'l Corp.*,
   2018 WL 4759744 (S.D.N.Y. Sept. 30, 2018) ........................................................................ 6

*Std. Inv. Chtd., Inc. v. Fin. Indus. Regulatory Auth., Ind.*,
   347 Fed. App'x 615 (2d Cir. 2009) .................................................................................... 3, 7

*Support Sys. Assocs. Inc. v. Tavolacci*,
   522 N.Y.S.2d 604 (N.Y. App. Div. 1987) ............................................................................... 9

*Tropical Sails Corp. v. Yext*,
   2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016) ................................................................. passim

*Tropical Sails Corp. v. Yext, Inc.*,
   2016 U.S. Dist. LEXIS 490 (S.D.N.Y. Apr. 12, 2016) ........................................................... 10

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir. 1995) ......................................................................................... 2, 3, 11

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
   2017 WL 9400673 (N.D.N.Y. Jan. 6, 2017) ........................................................................... 5

*Vesta Corset Co. v. Carmen Founds., Inc.*,
   1999 WL 13257 (S.D.N.Y. Jan. 13, 1999) .............................................................................. 9

I.      **INTRODUCTION**

Plaintiff Suzanna Bowling and Defendants Johnson & Johnson and McNeil Nutritionals, LLC (collectively, "McNeil") respectfully submit this Joint Motion in response to this Court's order of March 29, 2019, which denied the parties' previous motions to file various materials under seal. Plaintiff and McNeil have met and conferred and request that the following information be sealed:

- *Plaintiff's prior settlement with McNeil.* — McNeil filed under seal a confidential settlement agreement that resolved Plaintiff's claims about McNeil's Listerine product and included a covenant not to sue McNeil.[1] Apart from that covenant not to sue, the terms of this agreement are irrelevant to this action and reflect McNeil's business and legal strategies related to settling claims by consumers.

- *McNeil's proprietary business information.* — McNeil requests that this Court seal its confidential and proprietary business information, including information related to its sales numbers, profit margins, market research, product specifications, relationships with manufacturers and customers, and internal pricing data. Plaintiff does not oppose this request.

- *Plaintiff Bowling's medical condition.* — Several briefs and accompanying exhibits describe Plaintiff's food sensitivities and medical diagnoses, as reported by Plaintiff in her deposition. Plaintiff contends this is private medical information that should be sealed. McNeil does not oppose this request.

- *Personal contact information.* — A small number of documents in the record

---

[1] In connection with this motion, by reference to the "covenant not to sue," Plaintiff in no way concedes that the purported covenant not to sue is applicable or enforceable. Nor does Plaintiff waive any arguments previously made concerning the covenant.

1

reference individuals' home address or personal email address. The parties jointly request that this private information be redacted.

A detailed table listing the parties' requests for sealing accompanies this motion. These requests are narrowly tailored to seal the information described above, and no other information. In addition to the materials filed by the parties, Plaintiff and McNeil also request that portions of this Court's March 29 order remain under seal, for the reasons discussed below.

## II.    LEGAL STANDARD

Generally, "documents used by parties moving for, or opposing [class certification] should not remain under seal absent the most compelling reasons." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 121 (2d Cir. 2006) (quoting *Joy v. North*, 692 F.2d 880 (2d Cir. 1982)). In determining whether to seal documents, a district court must first determine that the documents at issue are "judicial documents," that is, a document "relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 119.

"Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." *Id.* The weight of the presumption of access is a function of "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.*

"Finally, after determining the weight of the presumption of access, the court must 'balance competing considerations against it.' . . . Such countervailing factors include but are not limited to . . . 'the privacy interests of those resisting disclosure.'" *Id.* at 120 (citing *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). Among the privacy interests recognized by courts in this Circuit are (1) confidential settlement terms, *see Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, 2012 WL 1022258, at *2 (S.D.N.Y. Mar. 22, 2012); (2) proprietary

2

business information, *see Std. Inv. Chtd., Inc. v. Fin. Indus. Regulatory Auth., Ind.*, 347 Fed. App'x 615, 617 (2d Cir. 2009); and (3) private medical information, *see United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995).

## III. ARGUMENT

In its March 29, 2019 order, this Court held that "the documents at issue are 'judicial documents' for the purpose of the framework for evaluating sealing requests set forth by the Second Circuit in *Lugosch* . . . ." Order at 16. The only remaining inquiries, therefore, are (1) the weight of the presumption of access in relation to each type of information that the parties request be sealed, and (2) whether the applicable privacy interests outweigh that presumption.

### A. This Court Should Seal Information Related to Plaintiffs' Unrelated Settlement with McNeil

Attached as Exhibit I to the Declaration of Jason A. Orr (Dkt. 57-9) is a confidential settlement agreement between Plaintiff and McNeil related to previous legal claims she asserted in connection with Listerine, another of McNeil's products. That agreement contained a covenant not to sue, which this Court cited in determining that Plaintiff is an inadequate class representative. (Mar. 29 Order at 10–12.) The parties' briefing and this Court's discussion related to the covenant not to sue are therefore integral to the public's understanding of this Court's decision. *See Tropical Sails Corp. v. Yext*, 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016) (citing *Lugosch*, 435 F.3d at 123). The agreement itself should nevertheless be sealed—that is, its terms redacted apart from the covenant not to sue—for two reasons. First, the public has no interest in accessing the remaining terms of the agreement because they are irrelevant to this action and to the Court's decision. Second, the parties' interests in maintaining the confidentiality of their settlement agreement rebuts the presumption of public access to the extent it applies to the terms and conditions outside the covenant not to sue.

> 1. **The presumption of access should carry little or no weight as it relates to the irrelevant terms of the settlement**

The public's right of access to court records does not necessarily require disclosure of the entirety of any given judicial document.  As this Court explained in *Tropical Sails,* the purpose of making judicial documents publicly available is to help the public understand "both . . .the [judicial system] in general and its workings in a particular case" by letting them see what led to the Court's ruling, *id.* at *3 (citing *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir. 2004)), and also to give the public "an opportunity to assess the correctness of the judge's decision" by reviewing documents that the Court did, or could have, relied upon when deciding the matter at hand.  *Id.* (citing *Lugosch,* 435 F.3d at 123); *see also Bernsten v. O'Reilly,* 307 F. Supp. 3d 161, 167 (S.D.N.Y. 2018) ("When this Court issues its Opinion on [defendant's] Motion, the public deserves to see what judicial document[s] it relied on.").  To achieve this goal, it is not necessary in all instances that all portions of a judicial document be disclosed.

Courts in this district have sealed confidential settlement agreements in exactly the manner proposed here: keep public the fact of the agreement's existence, but seal the exact terms of the agreement where they are not relevant to parties' claims and arguments and to the court's determination.  In the trademark case *Louis Vuitton Malletier, S.A. v. Hyundai Motor America*, Louis Vuitton entered evidence of a prior settlement agreement in an unrelated matter involving Tiffany & Co., as evidence of its history of enforcing its marks.  2012 WL 1022258, at *3.  Louis Vuitton moved to seal the Tiffany & Co. agreement, as well as excerpts of deposition testimony and other documents that discussed the agreement's terms.  *Id.* at *2.  Although the court determined the agreement was a "judicial document," it found the presumption of access "d[id] not compel disclosure of its precise terms on matters that have no effect on the adjudication."  *Id.*

at *3. Accordingly, the court allowed the parties to file redacted materials omitting "the terms of Louis Vuitton's arrangement with Tiffany." *Id.*

Like in *Louis Vuitton*, the parties here relied on the Listerine settlement only for a narrow purpose: establishing that Plaintiff was bound by a covenant not to sue Defendants. *See* Dkt. 56 at 10–13. This Court's March 29 order denying class certification likewise discusses the agreement only as it related to Plaintiff's covenant not to sue. (*See* Mar. 29 Order at 3, 10). Accordingly, other terms of the agreement have "no effect on the [Court's] adjudication" in denying Plaintiff's motion for class certification and should be sealed. *Compare Louis Vuitton*, 2012 WL 1022258, at *3, *with Bernsten v. O'Reilly,* 307 F. Supp. 3d 161, 170 (S.D.N.Y. 2018) (denying request for partial redactions to prior settlement agreement because without full access to the agreement, "[t]he public would have no way to make sense of the Court's analysis").

### 2. **The parties' interest in confidentiality rebuts the public's weak interest in viewing the full terms of the agreement**

The presumption of access to court records is rebutted where a party can show that the requested sealing is "necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Lugosch,* 435 F.3d at 124 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)); *see also Tropical Sails,* 2016 WL 1451548, at *3 (quoting *In re Parmalat*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009)). Higher values are at play here.

It is widely recognized that there "may well be valid reasons to keep settlement terms confidential, particularly when [as here] the settlement itself was conditioned on confidentiality." *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.,* 2017 WL 9400673, at *5 (N.D.N.Y. Jan. 6, 2017). If disclosed, the terms of the Settlement Agreement would provide insight into Defendants' litigation risk management strategies and techniques, the disclosure of which could weaken McNeil's position in subsequent settlement negotiations. *See Seoul Viosys Co., Ltd. v.*

5

*P3 Int'l Corp.,* 2018 WL 4759744, at *13 (S.D.N.Y. Sept. 30, 2018) (noting that plaintiff's "requested redactions referring to confidential settlement agreements . . . concern confidential business information that could harm Plaintiff's competitive standing"); *cf. Republic Servs., Inc. v. Liberty Mut. Ins. Co.,* 2006 WL 3004014, at *9 (E.D. Ky. Oct. 20, 2006) (noting that while working for insurer, attorney "was exposed to confidential information concerning Liberty Mutual's practices and procedures, strategies for handling litigation, [and] claims operation . . . ."); *Madukwe v. Del. State Univ.,* 552 F. Supp. 2d 452, 462-63 (D. Del. 2008) (accepting argument that during the course of representation, law firm may have "obtained [ ] confidential information about [defendant's] general litigation or risk management strategies"). McNeil's litigation management is a component of its overall business operation, and its successful management of that litigation puts it in a stronger position vis-à-vis its competitors, who have no visibility into McNeil's confidential litigation management strategies. The terms and conditions that McNeil seeks in its settlement agreements, and the amounts it settles for and under what conditions, therefore constitute competitively sensitive information—which as discussed in greater detail below, courts routinely find capable of rebutting the First Amendment presumption of public access. *See, e.g., Tropical Sails,* 2016 WL 1451548, at *4 (quoting *N.Y. v. Actavis, PLC,* 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) ("[i]nternal documents . . . that contain non-public strategies . . . constitute 'confidential commercial information' under Federal Rule 26(c)(1)(G)" and can rebut First Amendment presumption of public access); *In re Digital Music Antitrust Litig.,* 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) (concluding that "internal pricing strategies and competitive pricing data[are] sufficiently sensitive to warrant redaction").

  **B.**   **This Court Should Seal McNeil's Proprietary Business Information**

"Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are sources of business information that might harm a litigant's

6

competitive standing." *Angidynamics, Inc. v. Biolitec, Inc.*, 2011 WL 13206054, at *2 (N.D. N.Y. Jun. 14, 2011) (quoting *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978)). The Second Circuit has recognized that proprietary business information that would impose financial or competitive harm can outweigh "the qualified First Amendment presumption of public access," especially where the information "sheds almost no light on either the substance of the underlying proceeding or the basis for the Court's decision." *Std. Inv. Chtd., Inc.*, 347 Fed. App'x at 617.

The presumption of access is highly attenuated where, as here, the Court's decision on Plaintiff's motion for class certification rested on its determination that Plaintiff was an inadequate class representative. (Mar. 29 Order at 14.) The Court therefore did not need to reach the parties' expert testimony or any of their arguments that concerned McNeil's conduct. (*Id.*) The public's interest in inspecting McNeil's confidential internal documents is therefore severely diminished, as such inspection would not assist the public in understanding the Court's decision or why it is correct. *See Tropical Sails Corp.*, 2016 WL 1451548, at *3.

Regardless of what weight this Court gives the presumption of access in connection with McNeil's confidential business information, that presumption is rebutted by McNeil's strong interest in protecting its competitively sensitive proprietary information and trade secrets. The parties' briefing and exhibits are peppered with such information that, if publicly disclosed, could disadvantage McNeil in the competitive consumer products market. Each type of proprietary business information is addressed in turn.

*Profit margins.* — Exhibit T to the Reply Declaration of Frederick Klorczyk (Dkt. 80) contains deposition testimony about Benecol's gross profits, and this information is cited in other materials filed with the Court in connection with Plaintiff's class certification motion (Dkt. 37,

81, 85). The disclosure of McNeil's profit margins during the relevant time period threatens McNeil's competitive position because it provides "valuable insight into [McNeil's] current business practices" related to other products on the market. *See Encyclopedia Brown Prods. v. Home Box Office*, 26 F. Supp. 2d 606 (S.D.N.Y. 1998) (sealing documents that revealed company's "cost and profit structures"). Even though McNeil no longer owns the Benecol brand, competitors can exploit information about Benecol's profit margins to estimate McNeil's margins on its current product line. If McNeil's profit margin for Benecol were disclosed, it would face financial harm as its competitors maneuver to outcompete McNeil.

*Product specifications.* — Exhibits I and J to the Klorczyk Declaration (Dkts. 34-9, 34-10) are highly confidential product specifications for Benecol that detail the specific contents of each ingredient and describe the properties and quality testing methods in Benecol's manufacturing process. Like the famously secret formula for Coca-Cola, these product specifications are paradigmatic trade secrets that would exact immense competitive harms if publicly disclosed. *See Nycomed US, Inc. v. Glenmark Generics, Inc.*, 2010 U.S. Dist. LEXIS 20788, at *17 (E.D.N.Y. Mar. 8, 2010) (citing *In re Gabapentin Litig.*, 312 F. Supp. 2d 653, 664–68 (D.N.J. 2004)) (recognizing that "secret chemical formulas" are trade secrets that "overcome the presumption of access"). In addition, portions of Plaintiff's motion for class certification and exhibits filed in support of her motion (Dkt. 38, 34-5, 57-19, 80 Ex. BB) discuss elements of the Benecol formula and should be sealed for the same reason.

*Sales figures.* — Aggregate sales numbers for Benecol appear in this Court's March 29 order, and in several documents filed in connection with Plaintiff's class certification motion (Dkt. 38, 36, 80 Exs. S & BB, 97-9.) In addition, the Declaration of Alison Sentie (Dkt. 61) discusses McNeil's internal processes for tracking sales to individual customers and distributors.

8

McNeil's sales numbers are competitively sensitive data that would unfair advantage its competitors by providing insight into McNeil's revenues and sales strategies. For this reason, courts routinely seal this type of information even in judicial documents. *See, e.g.*, *Playtex Prods., LLC v. Munchkin, Inc.*, 2016 U.S. Dist. LEXIS 42261, at *40–41 (S.D.N.Y. Mar. 29, 2016) (sealing plaintiff's "sales and revenue," noting that "Plaintiffs would be competitively harmed if they were revealed").

*Pricing data.* — In connection with Plaintiff's class certification motion, the parties and their expert witnesses relied on McNeil's confidential internal pricing information (Dkt. 57-2, 58, 58-2, 60, 95, 97-2, 97-4) and other pricing information purchased by McNeil from IRI, a market research company (Dkt. 37, 57-19, 79, 80 Exs. Q, S & U, 81, 84, 95, 96, 97-2, 97-4, 97-10). "Cost data is sensitive and potentially damaging if shared with competitors." *New York v. Actavis, PLC*, 2014 U.S. Dist. LEXIS 149327 (S.D.N.Y. Oct. 21, 2014) (citing *Vesta Corset Co. v. Carmen Founds., Inc.*, 1999 WL 13257, at *2 (S.D.N.Y. Jan. 13, 1999); *Support Sys. Assocs. Inc. v. Tavolacci*, 522 N.Y.S.2d 604, 605–06 (N.Y. App. Div. 1987). Likewise, "[m]arketing and promotional expenses are sensitive and can be damaging if shared with competitors and customers." *Id.*

*Market research and brand strategy.* — Many of the documents filed in connection with Plaintiff's class certification motion concern McNeil's marketing research and strategy for Benecol. (Dkt. 37, 34-6, 57-4, 57-5, 57-10, 58-1, 80 Ex. W.) This research was referenced and discussed by several of the parties' expert witnesses. (Dkt. 57-2, 57-14, 57-19, 57-20, 80 Exs. Q, S, U & AA, 81, 82, 85, 97-3, 97-6, 97-8, 97-10.) McNeil's confidential market research is competitively sensitive because it reveals its product development, its perceived market competitors, and its overall marketing strategy. If McNeil's competitors had access to this

information, they would unfairly gain insight into the types of research McNeil conducts, and the factors upon which it relies in its marketing strategies. *See Tropical Sails Corp. v. Yext, Inc.*, 2016 U.S. Dist. LEXIS 490, *10–11 (S.D.N.Y. Apr. 12, 2016) (sealing "internal marking strategies, company marketing plans, and internal emails regarding marketing tests"); *GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649–50 (S.D.N.Y. 2011) (noting that "material concerning the defendants' marketing strategies, product development, costs and budgeting" contain "highly proprietary material" and therefore may remain under seal).

*Customer service processes.* — The Declaration of Carla Oliveira (Dkt. 62) describes McNeil's internal processes for receiving and responding to feedback from Benecol customers. These processes are integral to how McNeil ensures customer satisfaction and are trade secrets; disclosure of this information would unfairly allow McNeil's competitors to learn from and copy its customer service practices and processes, and lessons learned. *See Dugan v. Lloyds TSB Bank, PLC*, 2013 U.S. Dist. LEXIS 51162, at *12 (N.D. Cal. Apr. 9, 2013) (sealing documents that "contain information regarding [Defendant's] customer service process").

*Business relationships.* — Exhibit E to the Klorczyk Declaration (Dkt. 34-5) and Exhibit BB to the Klorczyk Reply Declaration (Dkt. 80) contain information about the manufacturer with which McNeil contracted for the production of Benecol. This manufacturer information is not reflected on Benecol packaging, *see* Klorczyk Decl. Exs. A & B, and is not publicly known. In addition, Exhibit S to the Declaration of Laura Zeno (Dkt. 58-1) is a confidential presentation about the Benecol brand directed at a potential customer; consequently, this presentation contains competitively sensitive information about Benecol and McNeil that would unfairly advantage McNeil's competitors if publicly disclosed. *Cf. Nycomed US, Inc.*, 2010 U.S. Dist. LEXIS 20788, at *17 (E.D.N.Y. Mar. 8, 2010) (citing *In re Gabapentin Litig.*, 312 F. Supp. 2d at

664–68) (recognizing that "parties' suppliers" are trade secrets that "overcome the presumption of access").

### C. This Court Should Seal Plaintiff's Medical Information

The following documents contain private medical information from Plaintiff Bowling concerning her food sensitivities and medical diagnoses:  Exhibit A to the Orr Declaration, containing excerpts of Plaintiff Bowling's deposition testimony, (Dkt. 57-1), Exhibit L to the Orin Declaration, containing the expert report of Dr. Douglas L. Nguyen, M.D. (Dkt. 57-12), Exhibit Y to the Orin Declaration, containing additional excerpts of Plaintiff Bowling's deposition testimony (Dkt. 92-1), Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification (Dkt. 56), Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Exclude Expert Testimony (Dkt. 95), Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Exclude Expert Testimony (Dkt. 84), Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion to Exclude Expert Testimony (Dkt. 105), and Plaintiff's Reply Memorandum of Law in Further Support of Plaintiff's Motion for Class Certification (Dkt. 79).

As this Court has already recognized, "medical information may properly be filed under seal in some circumstances in light of the weighty privacy interests at stake." *See* 3/29/19 Opinion and Order at 17 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1051) (2d Cir. 1995) (noting that "illnesses" are a subject matter that is traditionally considered private)).  Here, there is no public interest in publicly filing this information, as this Court concluded that Plaintiff "does not seek to recover damages based on [her] illness," and so "attacks on the veracity of Bowling's medical claims are not a valid defense to the action."  As such, the precise details of Plaintiff Bowling's medical issues are not germane to the Court's analysis, and Plaintiff

11

Bowling's privacy interests should be protected by permitting such information to be filed under seal.

### D. This Court Should Seal Irrelevant Personal Information

Exhibit V to the Klorczyk Reply Declaration (Dkt. 80) contains the home address of deponent Laura Zeno. And the Declaration of Carla Oliveira (Dkt. 62) contains the personal email address of Plaintiff Suzanna Bowling. This personal contact information is private, sensitive, and entirely irrelevant to this lawsuit or the Court's determination of Plaintiff's class certification motion. The public therefore has no right to access these individuals' personal information, which should be sealed through narrowly tailored redactions.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff and McNeil request that the Court seal the court records described above.

/
/
/
/
/
/
/
/
/
/
/
/

| | | |
|---|---|---|
| Date: | April 12, 2019<br>Los Angeles, California | Respectfully submitted,<br><br>By: */s/ Richard B. Goetz*<br>Richard B. Goetz (*Pro Hac Vice*)<br>Carlos M. Lazatin (*Pro Hac Vice*)<br>400 South Hope Street<br>Los Angeles, California 90071<br>Telephone: (213) 430-6000<br>Facsimile: (213) 430-6407<br>rgoetz@omm.com<br>clazatin@omm.com<br><br>Hannah Y. Chanoine<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061<br>hchanoine@omm.com<br><br>*Counsel for Defendants Johnson & Johnson and McNeil Nutritionals, LLC*<br><br><br>By: */s/ Neal J. Deckant*<br><br>Joseph I. Marchese<br>Scott A. Bursor<br>Joseph I. Marchese<br>888 Seventh Avenue<br>New York, NY 10019<br>Telephone: (646) 837-7150<br>Facsimile: (212) 989-9163<br>E-Mail: scott@bursor.com<br>jmarchese@bursor.com<br><br>Frederick J. Klorczyk III<br>Neal J. Deckant<br>1990 North California Blvd., Suite 940<br>Walnut Creek, CA 94596<br>Telephone: (925) 300-4455<br>Facsimile: (925) 407-2700<br>E-Mail: fklorczyk@bursor.com<br>ndeckant@bursor.com<br><br>*Attorneys for Plaintiff* |

## **ATTESTATION**

I hereby attest that Neal J. Deckant, counsel for Plaintiff, has concurred in the filing of this Joint Renewed Motion to File Documents Under Seal.

*/s/ Richard B. Goetz*
Richard B. Goetz
