UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 2 2 2019

Suzanna Bowling,
Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

—v—

Johnson & Johnson and McNeil Nutritionals, LLC,

Defendants.

17-cv-3982 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Suzannah Bowling brings this suit against McNeil Nutritionals, LLC ("McNeil") the distributor of the butter alternative spread Benecol, and Johnson & Johnson, its parent company. Bowling alleges that the statement "No Trans Fat," which appeared on Benecol's labeling until 2011, was false and misleading, and brings claims for unjust enrichment, violation of New York General Bus Law ("NYGBL") §§ 349 and 350, negligent misrepresentation, and fraud. Now before the Court is Bowling's motion to certify a class of persons who purchased Benecol in New York from January 1, 2008 to December 31, 2011. In addition, both parties have moved to exclude expert testimony proffered by their opponents. For the reasons set forth below, Bowling's motion for class certification is DENIED. Both parties' motions to exclude expert testimony are also DENIED as moot.

I. **Background**

The Court assumes familiarity with the factual background in this matter as set forth its March 28, 2018 Memorandum Opinion & Order. *See* Dkt. No. 26.

1

Briefly, the underlying case concerns the labeling of two products distributed by McNeil from 2008 to 2011—Benecol and Benecol Light Spreads. Both versions of Benecol are marketed as cholesterol-lowering healthier alternatives to butter or margarine. *See* Dkt. No. 38 at 2; Dkt. No. 56 at 1. During the relevant period, Benecol and Benecol Light Spreads were sold with the statements "No Trans Fat" or "No Trans Fatty Acids" on the outer packaging. *See* Dkt. No. 38 at 1; Dkt. No. 56 at 1. However, one of the ingredients in the spreads is partially hydrogenated soybean oil, which contains trans fats. *See id.* Because the amount of trans fat per serving was less that 0.5 g, FDA regulations dictated that Benecol's nutrition information list "0g" trans fat per serving. *See* Dkt. No. 38 at 6; Dkt. No. 56 at 1. Despite this feature of the FDA regulations, the FDA does not authorize the "no trans fat" claims on the labeling.[1] *See* Dkt. No. 26 at 7.

Plaintiff in this case states that she suffers from a severe sensitivity to trans fats and avoids consuming them. Dkt. No. 57, Ex. A ("Bowling Dep.") at 26:1–27:25. According to her deposition testimony, Bowling purchased a tub of Benecol Light at a Walmart in White Plains, New York in 2011, after the "No Trans Fat" label caught her eye. *Id.* at 141:1–142:23. In her deposition, Bowling estimated that the purchase was made "either in May or later June," and denied that it could have been as late as fall 2011. *Id.* at 149:10–25. In her Declaration, Bowling states that she made the purchase in "the second half of 2011." Dkt. No. 35 ¶ 2. After cooking a meal with the Benecol Light that she purchased, Bowling asserts that she experienced severe gastrointestinal distress, which she attributes to the trans fats in the product. *See* Bowling Dep.

---

[1] On July 21, 2017, Defendants filed a motion to dismiss the complaint on preemption grounds based on the argument that the "no trans fat" label was permitted under federal regulations. Dkt. No. 11. In an Opinion dated March 28, 2018, this Court rejected Defendants argument, concluding that the FDA nutrient content claim regulations did not authorize a "trans fat free" content claim. *See* Dkt. No. 26.

at 144:12–20. Bowling testifies that she "called and wrote" Johnson & Johnson after the incident to obtain a refund but was unsuccessful. Bowling Dep. at 148:23–150:5.

Defendants dispute the veracity of several of Bowling's key claims. First, they submit that their internal database of shipping records for products sold to retailers and distributors since October 2008 shows that "Benecol Light Spread was never shipped to any Walmart or Walmart distribution center" in the period from 2008-2018. Dkt. No. 61 ¶ 5. The database also indicates that "no Walmart store or distribution center received any shipments of Benecol product before late September 2011." *Id.* at ¶ 6. Second, Defendants state that they keep regular records of customer telephone and email complaints, but that a thorough search of these records produced "zero records" of any telephone or email contact by Bowling either in 2011 or with any reference to Benecol. Dkt. No. 62 ¶¶ 4–11.

Defendants have also submitted evidence that Bowling is bound by a covenant not to sue arising from a settlement agreement in an unrelated lawsuit between the parties. *See* Dkt. No. 57, Ex. I. That case concerned Bowling's claims against McNeil and Johnson & Johnson for consumer fraud related to the labeling of a Listerine product. *See id.* at 1–2. On May 27, 2015 in exchange for monetary consideration, Bowling signed an agreement that provides, in relevant part:

> Plaintiffs agree that they and their agents, successors, assigns, personal representatives, heirs, executors, trustees and administrators will forever refrain from instituting, maintaining, collecting, proceeding, cooperating or assisting in the prosecution against [Johnson & Johnson, McNeil, or related entities] on any claim, demand, action, cause of action or liability, arising out of or related to the Action or products sold by McNeil, whether or not now known, suspected or claimed, which they have ever had, now have or hereafter may have.

3

*Id.* at 3. Bowling was represented by Bursor & Fisher P.A., who are also Plaintiff's counsel in this action. *Id.* at 10. Bowling does not dispute that this agreement exists, but generally declined to discuss its particulars due to its confidentiality provision. Bowling Dep. at 207:3–219:1.

Bowling filed this lawsuit on May 25, 2017, alleging that the "no trans fat" claims were false and misleading because Benecol does, in fact, contain trans fats. *See* Dkt. No. 1. Bowling seeks to recover against Defendants for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, violation of New York's General Business Law Sections 349 and 350, negligent misrepresentation, and fraud. *See id.*

On July 30, 2018, Bowling moved to certify and represent two classes:

All persons who purchased Benecol Regular Spread or Benecol Light Spread from January 1, 2008 to December 31, 2011 in the United States (the "Nationwide Class"); and

All persons who purchased Benecol Regular Spread or Benecol Light Spread from January 1, 2008 to December 31, 2011 in New York (the "New York Class").

Dkt. No. 38 at 4. Defendants opposed this motion, in part on the grounds that this Court lacks personal jurisdiction over out-of-state claims and because individualized issues of law would predominate in the nationwide class action. *See* Dkt. No. 56 at 22–25. In light of this critique, Bowling withdrew her motion "solely with respect to the nationwide class." Dkt. No. 79 at 2, n.2. The motion for class certification of the New York Class is now fully briefed and ripe for this Court's consideration.

In addition, the Court will address the parties' respective motions to exclude expert testimony. On October 11, 2018, Defendants moved to exclude the expert testimony of J. Michael Dennis and Colin Weir, submitted in support of Bowling's motion for class certification. Dkt. No. 75. On November 16, 2018, Bowling moved to exclude the expert

4

testimony of Douglas Nguyen, Carol A. Scott, David J. Reibstein, and Denise Martin, submitted by Defendants in opposition to class certification. Dkt. No. 83.

Finally, the parties have moved to file various exhibits and motion papers either entirely under seal or with redactions. *See* Dkt. Nos. 39; 67; 86; 93; 98; 103; 106.

## II. Legal Framework

In order to qualify for class certification, a plaintiff must first demonstrate that the class it proposes satisfies the four prerequisites of Federal Rule of Civil Procedure 23(a). Those requirements are:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These "four requirements—numerosity, commonality, typicality, and adequate representation —effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation marks omitted). "A class may be certified only if, 'after a rigorous analysis,' the ... court is satisfied that the prerequisites of [Rule 23(a)] are met." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)).

Assuming the requirements of Rule 23(a) are met, a plaintiff must then establish that certification is appropriate for one of the three reasons set forth in Rule 23(b). Here, Bowling seeks certification under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to class members predominate over any questions affecting only individual

5

members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *see also Dukes*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common question of law or fact, etc.") (emphasis in original). Accordingly, although a Rule 23 inquiry should not "extend into a protracted mini-trial of substantial portions of the underlying litigation," the "district judge must receive enough evidence, by affidavits, documents, or testimony," including expert evidence as appropriate, to "be satisfied" that the necessary elements of class certification have been established. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *see also Comcast*, 569 U.S. at 35 (directing courts to, for example, "conduct a rigorous analysis" of damages model proffered by certification proponent's expert) (internal quotation marks omitted).

### III. Discussion

#### A. Rule 23(a) Factors

The Court first assesses whether Bowling has met her burden to establish that the four requirements of Rule 23(a) are met.

As for the first requirement, the Court is satisfied that the proposed New York class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). ▮

6

████████████████████████████████ Even assuming that there were multiple repeat customers, the Court easily concludes that there were far more than 40 individual purchasers. Indeed, Defendants do not contest that the numerosity requirement is satisfied. *See generally* Dkt. No. 56.

The Court is also satisfied that the commonality requirement is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is met if "even a single question of law or fact [is] common to the members of the class." *Dukes*, 564 U.S. at 369. For purposes of Rule 23(a), the common question of law or fact need not predominate, but it must be capable of resolution in a classwide proceeding. *Id.* at 350. (Class "claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Bowling claims that class members overpaid for Benecol because the "No Trans Fat" claim on the label was false. Accordingly, to determine liability, the Court will need to determine whether the "No Trans Fat" label was false or misleading, and whether the class members paid a higher price for the product because of this label. These are common questions capable of classwide resolution for purposes of Rule 23(a)(2). Indeed, courts have routinely found the Rule 23(a) commonality requirement satisfied when a putative class representative claims that a product's manufacturer "defrauded purchasers" by making a claim on the product's label. *Eben v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014); *see also In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405 (E.D.N.Y. 2015); *Dzielak v. Whirlpool Corp.*, No. 2:12-89 (KM)(JBC) 2017 WL 6513347, at *5 (D.N.J Dec. 20 2017). Moreover, Defendants do not argue that the commonality requirement is not met here, but rather that "individualized issues of

7

exposure and causation will predominate over common issues of law and fact." Dkt. No. 56 at 2. Therefore, the commonality requirement is met.

As for the third and fourth requirements, Defendants argue that Bowling can meet neither the typicality nor the adequacy prerequisites because she is subject to unique defenses that "threaten to become the focus of the litigation." *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 135 (S.D.N.Y. 2007). For the reasons set forth below, the Court agrees.

### 1. Unique Defenses

If Defendants raise the argument that a "unique defense" applies to the putative class representative, courts analyze the issue under either the typicality or adequacy prongs of Rule 23(a). *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 245 F.R.D. 147, 163 n.18 (S.D.N.Y. 2007) (vacated in part on other grounds) (noting that defendants' "unique defense" arguments "are relevant to both Rule 23's typicality and adequacy of representation requirements"). The Second Circuit has instructed that "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification...[but] class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (abrogated on other grounds). The relevant inquiry at this stage is whether any unique defenses "will unacceptably detract from the focus of the litigation to the detriment of absent class members." *In re Omnicom Grp., Inc., Sec. Litig.*, No. 02 CIV. 4483 (RCC), 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007) (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)). The Court need not resolve whether a unique defense would ultimately succeed on the merits; rather, certification must be refused if the Court is

8

"confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." *Id.* On the other hand, the typicality and adequacy requirements may be met if the proffered unique defenses "seem to rest on little more than speculation." *Wallace v. IntraLinks*, 302 F.R.D. 310, 316 (S.D.N.Y. 2014).

Defendants raise three possible unique defenses that may apply to Bowling's claims: (1) that her medical claims regarding her sensitivity to trans fats and negative reaction to Benecol render her unreliable and her claims atypical; (2) that she appears to have given false testimony about key elements of her claim; and (3) that she is bound by a covenant not to sue Defendants. The Court will address each argument in turn.

*a. Medical Issues*

Defendants argue that Bowling's medical issues "translate to different motivations for avoiding trans fats and raise[] defenses unique to Bowling that do not apply to other members."[2] Dkt. No. 56 at 8. Bowling replies that the medical issues are irrelevant to her theory of liability: "Plaintiff—like all class members—was injured at the time of purchase when she paid a price premium for Benecol solely attributable to the No Trans Fat Claim." Dkt. No. 79 at 2. The Court agrees with Bowling. Though Bowling did testify concerning her alleged reaction to consuming Benecol, she does not seek to recover damages based on the illness, and so her *asserted* claims match those of other putative class members, even if she has others potential claims that she has chosen not to pursue. As a result, attacks on the veracity of Bowling's medical claims are not a valid defense to the action. Bowling's medical issues do not defeat typicality or adequacy.

---

[2] In support of their argument, Defendants have proffered medical testimony from expert medical witness Dr. Douglas L. Nguyen. *See* Dkt. No. 57, Ex. 12. Plaintiff has moved to exclude this testimony. Dkt. No. 83. Because the Court determines that the disputed medical issues are irrelevant, it need not determine the admissibility of Dr. Nguyen's evidence at this stage, as discussed more fully in Section III (B).

9

### b. *Covenant Not to Sue*

Defendants also argue that Bowling is bound by the covenant not to sue Defendants "for any claim...arising out of or related to...products sold by [Defendants]" contained in the 2015 settlement agreement between the parties. *See* Dkt. No. 57, Ex. I at 3. Bowling does not contest the existence or validity of the covenant, but argues that (1) Defendants waived the defense by failing to bring it as a compulsory counterclaim or to raise it in their Answer; and (2) "a covenant not to sue is not a defense to class certification or to this action." Dkt. No. 79 at 4.

With respect to Bowling's first argument, the Court disagrees that Defendants were required to raise the defense in a counterclaim. Under Rule 13(a)(1)(A), a counterclaim is compulsory only if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A); *see also Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 141 A.D.3d 464, 467 (N.Y. App. Div. 2016) (determining that a claim for breach of a covenant not to sue "aro[se] out of the [same] transaction or occurrence" as the parties' claims in federal court, and therefore should have been brought in that action) (quoting Fed. R. Civ. P. 13(a)(1)(A)). Because the settlement agreement was unrelated to the subject matter of Bowling's claims in this suit, a claim for breach of the covenant not to sue is not a compulsory counterclaim. In addition, though Bowling states that Defendants failed to raise the covenant as an affirmative defense in their Answer, the filing reveals that they pleaded a defense under the doctrine of "informed consent, release and waiver," which could encompass a covenant not to sue. Dkt. No. 27 at 13. Moreover, even if Defendants have failed to effectively plead the defense, whether it would be waived in this action is far from clear. *See, e.g., Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 891 F. Supp. 2d 489, 495 n.8 (S.D.N.Y. 2012)

10

(rejecting argument that defendants waived a defense based on a covenant not to sue in the absence of a showing of bad faith, prejudice, or delay in the proceedings).

Bowling's argument that "a covenant not to sue cannot be enforced to bar a plaintiff from filing suit" is similarly unavailing. Dkt. No. 79 at 4. Even if the existence of a covenant not to sue is not a "complete bar" to filing an action, it is nonetheless a defense applicable to Bowling only and therefore relevant to the class certification analysis. *See Colton v. New York Hospital*, 53 A.D.2d 588, 588 (N.Y. App. Div. 1976) (affirming the denial of summary judgment despite the existence of a covenant not to sue on the grounds that "the sufficiency of the release should be left for determination at trial."). Of course, a covenant not to sue is not a "defense to class certification," but it is a unique defense to Bowling that will require further litigation to determine its applicability and appropriate remedy, and is therefore relevant to the typicality and adequacy prongs of Rule 23(a). The Court finds Bowling's arguments insufficient to rebut Defendants' showing that her claims in this case may be subject to a covenant not to sue.

In addition, the Court concludes that a covenant not to sue is the type of "unique defense" that could "unacceptably detract from the focus of the litigation to the detriment of absent class members." *In re Omnicom* Grp., 2007 WL 1280640, at *4. In cases where some putative class members have signed releases that may be applicable to their claims, courts have declined to certify a class on the grounds that an "attack on the settlements or releases would clearly present individual issues as to the circumstances surrounding the obtaining of the release." *Ingenito v. Bermec Corp.*, 376 F. Supp. 1154, 1171 (S.D.N.Y. 1974); *see also Romero v. Flaum Appetizing Corp.*, 2011 U.S. Dist. LEXIS 23782, at *14–22 (S.D.N.Y. Feb. 28, 2011) (collecting cases); *Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 318 (S.D.N.Y. 2003) (finding typicality and adequacy requirements unmet where some putative class members executed releases because

"the Releases insert individual issues into this lawsuit, and those individualized issues prevent a finding that the Plaintiffs' claims are typical of those brought for the benefit of the Class"); *Walker v. Asea Brown Boveri, Inc.*, 214 F.R.D. 58, 65 (D. Conn. 2003) (finding typicality requirement unmet where named plaintiffs executed releases, because "a fact-specific inquiry will be necessary to determine whether either of the named plaintiffs knowingly and voluntarily waived their rights").

It may be that the covenant not to sue is not binding or is inapplicable to Bowling's claims here, but, in light of the foregoing analysis, the Court concludes she will be required to "devote considerable time" to rebutting its applicability. *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 481 (S.D.N.Y. 2002) (quoting *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y.1989)).

### c. Credibility on Key Issues

Defendants argue that Bowling's inconsistent or incredible testimony concerning her purchase of Benecol calls into question her veracity on key issues. *See* Dkt. No. 61 at 9–10. Specifically, Defendants note that she testified to buying Benecol Light at Walmart either in May or June of 2011 or in the second half of 2011, but Defendants' records indicate that Benecol Light was never sold at Walmart. *See id.* In addition, Bowling testified that she contacted customer service to request a refund, but there are no records of such contact. *Id.* Bowling does not attempt to explain these factual issues, but argues that her credibility on "peripheral details" is not relevant to this motion. Dkt. No. 76 at 5.

The credibility of a plaintiff can be considered in a motion for class certification, and denial is appropriate "in cases where the plaintiff's credibility is so vulnerable to attack that the plaintiff is subject to unique defenses making his claim atypical and antagonistic to the other

members of the class." *Cruden v. Bank of New York*, Nos. 85 Civ. 4170 (JFK), 85 Civ. 4219 (JFK), 85 Civ. 4570 (JFK), 1988 WL 9514, at *5 (S.D.N.Y. Feb. 1, 1988) (citing *Kline v. Wolf*, 88 F.R.D. 696, 698 (S.D.N.Y. 1981)). A "mere failure to recall certain relevant facts," however, is not sufficient. *Downie v. Carelink, Inc.*, No. 16-CV-5868 (JPO), 2018 WL 3585282, at *7 (S.D.N.Y. July 26, 2018). Here, Defendants have presented unrebutted evidence that Bowling could not have purchased Benecol Light in the manner in which she has testified; she is therefore "vulnerable to serious attacks" on her credibility. *Kline v. Wolf*, 702 F.2d 400, 401 (2d Cir. 1983). Nor can the Court conclude that the circumstances of Bowling's purchase are "peripheral." Indeed, this case is analogous to *Kline*, in which the Second Circuit upheld a district court's denial of class certification when a putative class representative testified that he had purchased the stock at issue in the case in July after reading a report that the record reflected had not been issued until August. *Id.* at 401–403. Though the Court does not reach a conclusion at this stage that Bowling testified falsely, there is nevertheless sufficient justification for the conclusion that she would not be an adequate class representative in light of the substantial credibility issues that threaten to undermine her claims. *See id.* at 403.

\*\*\*

The Court concludes that Defendants have made a sufficiently clear showing that Bowling is subject to a covenant not to sue that may be a defense to her claims. In addition, Defendants have raised credible concerns about the central factual predicate of Bowling's claim—that she purchased Benecol during the relevant period. *Cf. Famular v. Whirlpool Corp.*, 16 CV 944 (VB), 2019 U.S. Dist. LEXIS 44907, at *8 (S.D.N.Y. Mar. 19, 2019) (rejecting unique defense argument regarding class representative's standing because plaintiff had "demonstrated, by a preponderance of the evidence, that he purchased a qualifying washing

13

machine"). These defenses are "meritorious enough to require the plaintiff to devote considerable time" to rebut them. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008) (quoting *Hallet v. Li & Fung Ltd.*, No. 95 Civ. 8917 (JSM), 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997)); *see also Baffa*, 222 F.3d at 60 (affirming the district court's denial of class certification based on a combination of potentially valid defenses and individualized factual questions). The typicality and adequacy requirements of Rule 23(a) are not satisfied here.

For these reasons, the Court concludes that the Rule 23(a) prerequisites are not met , and therefore that Bowling's motion for class certification must be denied. Accordingly, the Court does not reach the question of whether Bowling has met the Rule 23(b) requirements.

### B. *Daubert* Motions

The parties have filed motions to exclude the expert testimony offered by their opponents in support of or in opposition to the instant motion for class certification. *See* Dkt. Nos. 75, 83. The Court notes that "[n]either the Supreme Court nor the Second Circuit has definitively decided whether the *Daubert* standard governs the admissibility of expert evidence submitted at the class certification stage." *Chen-Oster v. Goldman Sachs & Co.*, 114 F. Supp. 3d 110, 114 (S.D.N.Y. 2015). Despite this lack of clarity, courts in the Second Circuit regularly "subject expert testimony to *Daubert*'s rigorous standards insofar as that testimony is relevant to the Rule 23 class certification analysis." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 55 (S.D.N.Y. 2016). In these instances, the "scope of the *Daubert* analysis is cabined by its purpose at this stage: the inquiry is limited to whether or not the expert reports are admissible to establish the requirements of Rule 23." *Chen-Oster*, 114 F. Supp. 3d at 115 (internal citation and quotation marks omitted).

In this case, the Court declines to apply the *Daubert* standard to the parties' expert testimony because that testimony is not, in this instance, "relevant to the Rule 23 class certification analysis." *Scott*, 315 F.R.D. at 55. As discussed above, Bowling fails to meet the Rule 23(a) prerequisites. In reaching this conclusion, the Court does not rely on any expert testimony submitted by the parties, nor would consideration of this testimony alter the Court's findings at this stage. Specifically, the challenged testimony is relevant to (1) whether individual issues of causation will predominate due to consumers' differing reasons for purchasing Benecol, (2) whether Bowling has presented a class-wide damages model that is "consistent with [her] liability case" and that can "measure only those damages attributable to that theory," and (3) whether Bowling's testimony about her medical condition is reliable. *Comcast*, 569 U.S. at 35. With respect to (1) and (2), these questions are relevant to the Rule 23(b) requirements that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," which the Court did not reach. Fed. R. Civ. P. 23(b)(3). As for (3), the Court concludes that the veracity of Bowling's claims about her medical conditions is irrelevant to the typicality and adequacy prerequisites because health is unrelated to the theory of liability advanced in the class certification motion. Accordingly, both motions to exclude expert testimony are denied in full as moot.

If they deem them relevant to the evidence before the Court on subsequent proceedings in this case, the parties are free to refile their motions. *See Chen*-Oster, 114 F. Supp. 3d at 115 ("It would be premature to decide [at the class certification stage] whether aspects of an expert opinion that go exclusively to the merits and not to the elements of Rule 23 would be admissible in subsequent proceedings.").

## IV. Sealing

Finally, the parties have made various requests to file briefing papers and exhibits with redactions or entirely under seal. *See* Dkt. Nos. 39; 67; 86; 93; 98; 103; 106. The bases for the applications are that the documents contain (1) Defendants' proprietary business information; (2) medical information; (3) confidential settlement information; (4) deposition testimony that a party has designated confidential under the Stipulated Protective Order entered in this case at Dkt. No. 22. For the reasons discussed below, the Court finds that these requests are significantly overbroad and insufficiently justified.

In line with earlier conclusions of the courts of this District, the documents at issue are "judicial documents" for purposes of the framework for evaluating sealing requests set forth by the Second Circuit in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). *See, e.g.*, *Tropical Sails Corp. v. Yext, Inc.*, 14-cv-7582 (JFK), 2016 WL 1451548, at *3 (S.D.N.Y. Apr. 12, 2016) ("[E]xhibits supporting a motion for, or opposition to, class certification would certainly be relevant to the judicial function and useful to the judicial process in probing behind the pleadings to determine whether the plaintiff's suit meets the special criteria set forth in Rule 23 for class certification"); *Mark v. Gawker Media LLC*, 13-cv-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015) (deeming "documents submitted in connection with Plaintiff's Motion for Class Certification" to be judicial documents for purposes of the *Lugosch* analysis). Furthermore, having carefully reviewed the documents' contents, the Court determines that there is a significant presumption of access to the subject information under both the common law and the First Amendment. *Mark*, 2015 WL 7288641, at *2; *cf. Lugosch*, 435 F.3d at 121 ("[D]ocuments submitted to a court for its consideration in a summary judgment motion are—as

a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.").

The analysis does not end here, however. Some redactions and limited sealing may nevertheless be appropriate if the parties can make a sufficient showing to overcome the presumption of access. *See Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 6:12-CV-00196 (BKS)(ATB), 2017 WL 9400673, at *3 (N.D.N.Y. Jan. 6, 2017) ("Having concluded that both the common law and First Amendment provide a right of access to the documents, the Court must consider whether countervailing factors outweigh the presumption of access and whether continued sealing is justified under 'the more stringent First Amendment framework.'") (quoting *Lugosch*, 435 F.3d at 124).

For example, medical information may properly be filed under seal in some circumstances in light of the weighty privacy interests at stake. *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) (noting that "illnesses" are a subject matter than is traditionally considered private). With respect to proprietary business information, competitive harm from the disclosure of such information is "potentially sufficient to defeat the presumption in favor of disclosure." *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n Sec. Dealers, Inc.*, 07-CV-2014 (SWK) 2008 WL 199537, at *8 (S.D.N.Y. Jan. 22, 2008); *see also Standard Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth.*, Ind., 347 Fed.Appx. 615, 617 (2d Cir. 2009) (upholding a decision that held that the party's "interest in protecting confidential business information outweighs the qualified First Amendment presumption of public access"). Courts in this district have also noted that "there may well be valid reasons to keep settlement terms confidential, particularly when the settlement itself was conditioned on confidentiality." *Utica Mut. Ins.*, 2017 WL 9400673, at *5 (internal quotation marks omitted). On the other hand, there is no basis for

sealing where the parties "have submitted the settlement documents for the identification of a motion and have not identified any privacy concerns (with any specificity)." *Id.* (quoting *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10 CIV. 1611(PKC), 2012 WL 1022258, at *3, (S.D.N.Y. Mar. 22, 2012). The parties are advised that "the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access." *Aioi Nissay Dowa Ins. Co. v. Prosight Specialty Mgmt. Co., Inc.*, 12-cv-3274 (JPO), 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (internal quotation marks omitted).

Though continued sealing may be justified for one or several of the reasons cited by the parties and discussed above, they have not provided the Court with sufficient or particularized justifications for the broad sealing that they seek, making it impossible for the Court to weigh the countervailing interests. Accordingly, the parties' motions for sealing are hereby DENIED. Within ten business days of the date of this Order, the parties may resubmit proposed redactions that are narrowly tailored in light of the above analysis. In addition, the parties shall support their application for redactions and/or sealing with authority and articulated reasoning that is specific to the content that they seek to keep under seal. If no further application is made within this time frame, the unredacted materials must be filed on the public docket.

## V. Conclusion

Bowling's application for class certification is hereby DENIED. Defendants' motion to exclude the expert testimony of J. Michael Dennis and Colin Weir, and Bowling's motion to exclude the expert testimony of Douglas Nguyen, Carol A. Scott, David J. Reinstein, and Denise Martin, are DENIED as moot with leave to refile. The parties' requests to file various exhibits

and briefing papers under seal are DENIED with leave to refile within ten days, as outlined above.

Because it arguably contains reference to information that the parties have requested be maintained under seal, this Order shall be filed under TEMPORARY SEAL. The parties are directed to meet and confer and to advise the Court in writing within ten business days of this Order whether they believe that any portion should be redacted prior to its public docketing.

Because the Court resolves these motions on the papers, Defendants' request for oral argument, Dkt. No. 99, is hereby denied.

This resolves Dkt. Nos. 33; 39; 67; 75; 83; 86; 93; 98; 99; 103; and 106.

SO ORDERED.

Dated: March 21, 2019
New York, New York

ALISON J. NATHAN
United States District Judge